The next case on calendar, Lemos v. Zacharias v. Bundy, has been submitted on the briefs. The next case on calendar for argument is United States v. Espinoza. Good morning. May it please the Court, Kara Hartzler, Federal Defenders, on behalf of Mr. Espinoza. In this prosecution for illegal reentry, the District Court made two key errors. First, it applied the wrong legal standard to admit Mr. Espinoza's statements explaining why he wanted to remain silent in violation of the Fifth Amendment. Second, the immigration judge never told Mr. Espinoza about his right to appeal, which alone made his underlying removal order invalid. For either reason, the Court should remand. So the first set of statements, the initial set of statements, I mean it's pretty simple. Why isn't there a confession even before any invocation? How do you parse that statement in terms of where the invocation is? So, I mean, I tried coming in illegal and the charges that I'm accepting, arguably confession. I mean, I don't see any reason why to keep talking, though, arguably invocation. I mean, do we have anything telling us that that should end the inquiry because the invocation came after the confession? Your Honor, the order doesn't matter. If this were a question that we were arguing on appeal— Well, the order certainly matters in our cases where there's a couple of hours between the two. I mean, as I understand the doctrine, there's a logic to it. And after the invocation, it's been invoked. But before the invocation, it can come in. The order only matters if our argument is that the officer should have stopped questioning until there was an unambiguous invocation. That's not our argument. Our argument is under Doyle. And the only consideration in this kind of bushy-head Doyle argument is, was there an explanation of Mr. Espinoza's refusal to talk that was admitted in the government's case in chief? That's all that matters. Order doesn't matter. Ambiguity doesn't matter. And for that purpose, I would actually very strongly urge the Court to look at our reply brief and to look at especially the cases of Garcia Morales and Hurd v. Terhune because order, ambiguity only matters if this was an argument about cutting off question. And that's exactly where the district court and the government went wrong because they both looked solely at the issue of, was this ambiguous? And along with that, what was the order? But that doesn't matter for purposes of a bushy-head argument. All that matters is, was there a statement admitted that was an explanation of Mr. Espinoza's refusal to talk? That's all that matters here. So, I mean, I think you're right that case law is a little bit confusing in part because invocation can be used in two different senses. One is the sort that cuts off questioning and the other is the just being silent is in some sense an invocation. And in, you know, we have said, you know, in bushy-head seems like it's sort of the, you know, I'm not going to talk kind of statement which should cut off questioning. Doyle is about just not saying anything. Why does it make sense? And I'm not sure that we have a case that says that an explanation of simply not saying anything, that in that context the explanation is excluded. Why does it make sense to treat simply not saying anything the same as affirmative invocations for purposes of excluding the explanations? Your Honor, I don't think there's a way to distinguish this case from bushy-head. And the reason is because in bushy-head there were two statements. I have nothing to say. I'm going to get the death penalty anyway. In other words, it was a very fatalistic, why should I talk because I'm going to be convicted. There's nothing different here. Mr. Espinoza says over and over, you know, I did it, but because I think the evidence is really clear, I don't see any reason to talk. And there's no distinction materially for purposes of this case between that and bushy-head. So suppose in this case, you know, he says that first statement that Judge Johnstone just read. And suppose there's a follow-up question, as there was here, like so are you invoking? And he says, no, I'm not. And then he goes on to answer questions and doesn't say anything very interesting. In that scenario, would the initial statement be excluded? It might be a little bit different if he didn't ultimately invoke. But that's not what happened here. I understand. I'm trying to figure out the logic of your position. So if there is no ultimate invocation, but we still have the same first statement, does the first statement come in or not? I think it does as long, I'm sorry, the statement does not come in. And the reason is because bushy-head itself is very clear that not merely silence, except that the circumstances of that silence as well, the entirety of bushy-head's statement was an invocation of his right to silence. But, counsel, the problem is that we don't have silence here. That's the difficulty with your argument is we don't have silence. We have statements. And so I don't understand why we should follow a precedent that talks about silence. But I don't think bushy-head had silence either, and that was suppressed. That's the language you just read about silence. You said silence. That's correct. But in bushy-head, the fact was actually that the person did make a statement. He said, I'm going to get the death penalty anyway. That's the equivalent of here Mr. Espinoza saying, of course, you know, it's obvious that I did it. And in both bushy-head and here, there was a statement saying, yeah, I probably did it, and you're going to find me guilty. And because of that, I don't want to say anything. So because of that. So do you equate that with invocation, the statement that he made? Do you equate that with that? What's your analytical framework? Are you saying the statements that he made constituted invocation of his right to remain silent? I'm saying that they were an invocation, but at a minimum, Your Honor, they were an explanation of why he was deciding not to talk. That's all that matters for this analysis. That seems, I guess I'm concerned. It's an awfully hard line to draw that we are, what, looking at punctuation? So in bushy-head, there's a comma between the explanation or confession and the invocation. Here, the transcript contains a period. I get that you're framing bushy-head, as I think it's true to bushy-head, that it is treating the entire statement as a whole. In other words, that we shouldn't parse it into a confession and invocation. So that's what I understand your original response to me was. But how do we do that reliably without kind of falling into magic words land? I mean, again, this is distinguishable by at least a period in the transcript. I'm not sure that that – I would have to go back to look at bushy-head. I thought it was a period in bushy-head as well, but I could be wrong. Even assuming that it was, as Your Honor characterizes it, I think all that this court needs to look at is two things that were admitted. The statement, I don't see any reason why to keep talking, though. And then in the second, I don't see the point of you no talking. Under bushy-head and Doyle, all that matters is that that is an explanation of why he doesn't want to talk, and it came in in the government's case in chief. That's the end. But I guess – so again, with bushy-head, it is different. You say the order doesn't matter, that it's all just circumstances of invocation of silence and silence, although that's not really silence, as Judge Rawlinson has pointed out. But in even bushy-head, the purported invocation came first. And again, it doesn't – the order doesn't matter as long as an explanation of why he wanted to remain silent was admitted. So how long does that logic follow? Just to push you on this a little bit. Sure. The order doesn't matter. So if this were not a sentence but a paragraph, if it were two paragraphs, if the first paragraph was an extended statement that could be read as a confession in great detail, and then the second paragraph said, and that's why I'm not going to talk to you and give – is that different? Yeah. Well, Your Honor, I think I would like to save a little bit of rebuttal time. But the case I would encourage this court to look at is Gomez. That was cited in our opening brief. And in Gomez, there was actually a long exchange where the person explained and said, no, no, no, I don't want to talk, and it was back and forth over time. The court ruled against the defendant there but only because it was brought in for impeachment purposes. The court basically said in Gomez, yes, but if the government had brought this in in its case in chief, that whole thing would not have come in. So I would encourage the court to look at that Gomez case in our opening brief. And I will save what little time I have left. Thank you, Your Honor. Thank you, counsel. Good morning. May it please the Court. Benjamin Hawley for the United States. The logic and the analysis underlying Doyle and Bushyhead and all of those cases is that the government cannot punish somebody for exercising their rights. So we cannot tell the jury that they should find the person guilty because he invoked his right to silence or because he actually was silent or wanted an attorney or anything like that. And that's not what the government did here. We were relying on affirmative statements that Mr. Espinoza made, and at no point in argument did we say something about, well, because he invoked or he didn't answer these questions, therefore you should find him guilty. But the statements that he made were in response to the question, Hector, would you like to speak with us today or do you want to wait for an attorney? So doesn't the fact that that was the question that prompted this inform our assessment of what he was doing? I think it informs it, but it doesn't resolve it. And the reason is because there are five or six transcript pages where the agent is continually trying to get him back to, I just need to know are you invoking or not, and he keeps going off talking about the evidence and it's obvious what I did. And so I would essentially characterize it as not responsive to the question she's trying to ask, and that's certainly how the agent and the court took it, is we're trying to address this issue first. Once we've addressed that, then I would be happy to talk about the evidence. Once we determine he actually did fully affirmatively, yes, I am invoking, then, of course, the questioning stopped at that point. Why doesn't this case then turn on whether the initial arguable invocation, I mean I don't see any reason why to keep talking, though, should be read as an invocation because you don't argue harmless error, and that was right at the beginning. There were statements all throughout that pick up on subsequent statements. So whatever the status of that first statement is, that's not this case. We've got the subsequent statements. And, you know, I mean I don't see any reason to keep talking. Not having a reason to keep talking sounds a lot like I don't want to keep talking, which is an invocation. So I guess my response there would be that this court has the specific language matters a lot, and cases usually in the invocation as to whether they're actually invoking and questioning should stop turn on very slight differences in language. Maybe I should get a lawyer. I think I want a lawyer. Should I get a lawyer? All go different directions, and in fact those were not held to be invocations. Here he's saying I don't see the point of talking, and the reason for that was it's pretty obvious and pretty straightforward, so I don't see the point of talking. He's not saying I don't see the point because I want to exercise my rights. It's just you all have the evidence. What's the point here? At the very least, it's ambiguous if he was invoking, and of course ambiguity means questioning doesn't have to stop and the government can still comment on it because the whole point of this doctrine is that we can't punish somebody for exercising their rights. Wasn't that all true in Bushyhead too? There he said I have nothing to say, which isn't I am invoking my right to silence. It's just I don't have anything to say, so why is this different? It's different because I think that's a more clear invocation, and agreed. There aren't magic words. There isn't a I am invoking, but there the Bushyhead court said that was a clear invocation, so whatever explanation of that necessarily comes along. It was not a situation where he's just saying I don't see the point of talking, and there's explanation for why. Explanation that goes with an invocation is what matters. To further that, I would point to the cases actually the defense relies on in the reply brief, Garcia-Morales and Heard. Garcia-Morales was the case where the person talked for some amount of time and then said, but I don't want to talk about co-conspirators with this recorder on. The defense there made exactly the same argument here, and this court resolved that by saying, but the person wasn't silent. The government was not drawing inferences of guilt from the silence. Same thing here. Heard was a state habeas case where the officers asked the person to reenact the murder, and he declined to do that. He answered other questions. There, the entire issue was whether selective invocation is a doctrine, if that exists. This court said it does, and so he did selectively invoke by refusing to reenact the murder, and therefore the government couldn't comment on that against silence. So it matters ultimately if you're characterizing it as silence or not. And here, again, there was no improper inference. We were not arguing the invocation is inference of guilt. We were using his affirmative statements. It's pretty obvious and pretty straightforward. I tried coming in illegally. Just to come back to these questions, I think your brief has a helpful passage, pages 20 and 21, that says these are invocations, these aren't, although most of the ones that aren't invocations are out of circuit or unpublished. So we're coming back to this question of exactly how do we parse these words. I guess I'm just trying to figure out the workability of either of these rules for, I mean, if we assume here that we have an officer who is in good faith engaging in an extended colloquy to try to explain this, although maybe not kind of being quite as precise as you'd hope. I mean, how are we supposed to draw the line there? Again, assume if I don't see any reason why to keep talking, if we think that that's enough of an invocation, is that the end of the story for this governance case? I don't think so. So in terms of the workability, these are always going to be difficult cases, and just the sheer number of cases, again, kind of parsing that specific language, for the agent or for the officer, indicates that. And I don't know without some kind of magic words line that we can ever have a just bright line, this invoked, this did not. I think the problem would be, though, if we then divide what is an invocation for purposes of the agent sitting there with the defendant, determining whether questioning can continue or not, and later whether the government can comment on whatever comments were made. That should be the same line. And here our argument was and is that he did not clearly invoke for those purposes. It was ambiguous. And ambiguity here goes that questioning can continue. All right. I guess one of the concerns with the argument that this is ambiguous, though, is that the government itself, including potentially this officer, understood it as an invocation, which is why it wasn't introduced in the first trial. No, I don't think that's the – the record's not clear as to why it wasn't introduced in the first trial, but regardless. Well, yeah, we're unlikely to see that in writing. Sure. Well, and I don't think the agent understood it that way, and that's why she continued to go back and try to get clarity as to, you know, I need a yes or a no. This isn't a yeah or a sure. I need to understand are you invoking or not. She was doing what I think agents should do is what's the plan here? Are you invoking? If so, that's fine. If not, then let's continue. But I want clarity, and that's why it took, you know, again, four or five pages of transcript of her trying to get a clear answer one way or the other as opposed to just, well, that was ambiguous and kind of, you know, marching forward and trying to get statements in that way. Also, do I understand your argument correctly? Are you saying that even if there were an invocation, so long as the government doesn't comment on silence, there's no Fifth Amendment violation? Is that your argument? Not quite. So we cannot comment on silence, and we also could not comment on invocation. So we couldn't say, for example, he invoked, and, you know, that is evidence of guilt. But do you make a distinction in this case where you said you just discussed the affirmative statement and didn't comment on it? Are you drawing that distinction? I am in that pointing to the opening and closing argument. For example, the statements that the prosecutors highlighted were, I tried coming in illegally. It's pretty obvious and pretty straightforward. Those were the comments that they were leading with. Why isn't that an explanatory invocation under Gomez? I mean, it seems to be explaining. But it's not explaining an invocation, I guess, would be the distinction we're drawing. How do we know that? You know, we're back to punctuation games then. I wish I could draw a bright line for the court. I don't think this court's cases have drawn a bright line, and I don't know that's possible. So what this court has said is when there's ambiguity, we find not an invocation. It has to be clear and unambiguous to the extent this was at most ambiguous in the government's view, and therefore the agent could continue, and therefore if we apply the same standard as we should, the government could properly comment on it as affirmative evidence of guilt, as it's not silence. It's a statement that we are bringing in. I agree that if he invoked and said, I mean, bushy head, right? If he said, if it was found this is an invocation and here's why I'm invoking, then yes, that would be a problem both for the agent and then at trial. Our argument is that's not what it was. At most it was ambiguous, and if it's ambiguous, that goes in favor of continuing questioning and permitting comment. Again, not on silence, but on whatever he actually said. I'm certainly happy to answer any questions on that or the other issue. Otherwise, I would submit. Thank you. All right, thank you, counsel.  I'd like to go to your question, Judge Johnston. The question of how do we slice and dice these statements, what do we look at and what do we not look at, the legal theory that has been set out in our reply brief shows why you don't have to do any of that. All you have to look at is was there an explanation of why he didn't want to talk. There absolutely was, and because of that, this is – It's not absolute. That's why we're here. So we're trying to figure out whether or not it was unequivocal. If I could explain maybe our theory, it's basically this. Bushyhead said that silence is treated the same as an explanation of why someone wants to remain silent, and then Garcia-Morales and Hurd said that when it's silence that you don't look at ambiguity, you don't look at order, you don't parse it out. Yeah, I understand that, but it's hard to say that talking is silence. I think that's exactly what Bushyhead said, and I would point to the government statement saying, well, but in Bushyhead it was different because they said it was ambiguous. They actually didn't say that. They didn't talk about anything regarding ambiguity or order or anything in Bushyhead. It's just not part of the analysis. Suppose, I mean, if you imagine, say you have a murder case, and the suspect waives his rights and then talks and says lots of things, and at one point they ask him, you know, where's the body? And he says, well, I'm not going to tell you that because I, you know, disposed of it in such a way that you'll never find it. Would you say that that's, I mean, that is a particular question that he is not answering, and he's giving an explanation for why he's not answering it. Would you say that that statement is excluded? Yes, because if, and that is exactly like we have here. I'm not going to tell you because of X. Because of doesn't matter. Anytime there's a I'm not going to tell you, here's my reason, it doesn't come into the government's case in chief. That's what this court has held. What's your response to the government's parsing of what it was arguing, that it was not commenting on silence, it was not commenting on the invocation, and therefore there's no Fifth Amendment violation. What's your response to that? I disagree with that, Your Honor, and the reason is because none of these cases have ever said that the reason why you're explaining why you're silent matters. It's just the Fifth Amendment says if you're doing it because you want to remain silent, why you're doing it is irrelevant. I'm happy to go on, but I know the court has a long calendar. Any questions? Thank you. Thank you to both counsel for your helpful argument. The case just argued is submitted for decision by the court.
judges: RAWLINSON, MILLER, JOHNSTONE